J-S27016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF: A.N.K., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.K., SR., | No. 1809 MDA 2015 |

Appeal from the Decree entered September 17, 2015,
in the Court of Common Pleas of Northumberland County,
Orphans' Court, at No(s): Adoptee No. 10 Year of 2015.

BEFORE: SHOGAN, J., DUBOW, J., and STEVENS, P.J.E. [*]

MEMORANDUM BY DUBOW, J.:                    **FILED JUNE 15, 2016**

Appellant, L.K., Sr. ("Father") appeals from the decree involuntarily terminating his parental rights to A.N.K. ("the Child") pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a) and (b). We affirm.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

Prior to the initial placement of the Child, Father and A.M. ("Mother") had an extensive history with Northumberland Children and Youth Services ("the Agency") concerning the parties' older child, and continuing after the birth of the Child in January 2012. Following the Child's birth, multiple referrals were made to the Agency following incidents of domestic violence

_____

[*] Former Justice specially assigned to the Superior Court.

between the parties, as well as Mother's untreated mental health issues and Father's alcohol abuse. During the Thanksgiving holiday in 2013, while the Child was present, Mother threatened to kill Father and Father's minor son, L.K., Jr., (Mother's stepson) with a butcher knife. As a result of this incident, Mother was incarcerated, and the Child was placed in Father's care.

The Child was adjudicated dependent on January 16, 2014, at which time the Agency was granted legal custody of the Child, with the parties retaining physical custody. However, five days later, on January 21, 2014, the Child was placed in the physical custody of the Agency following a referral that Mother was in violation of her bail condition that she has no contact with Father or L.K., Jr. This referral occurred after Mother was found hiding in a bedroom of the parties' residence. The child has remained in the physical and legal custody of the Agency since that date.

On January 16, 2014, the following goals were established for the parties: 1) to obtain and maintain stable, appropriate housing; 2) to obtain and maintain employment and provide proof of same; and 3) to attend anger management classes until successfully discharged. Additionally, Father was ordered to refrain from the use of alcohol and to enroll in and successfully complete drug and alcohol counselling. Father was also to attend biweekly periods of supervised visitations with the Child.

The Agency filed a Petition for the Involuntary Termination of Parental Rights ("TPR petition") as to each party on April 1, 2015, pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8). The Orphans' Court held an

evidentiary hearing regarding the Agency's TPR Petitions on September 17, 2015 ("TPR Hearing"). The Agency presented testimony from a bonding assessment expert, three of its employees, and the Child's kinship foster mother. Both Mother and Father testified on their own behalf. At the conclusion of the hearing, the Orphans' Court granted the petitions based upon Section 2511(a)(1) and (8), and Section 2511(b). This timely appeal by Father follows.[1]

## ISSUES ON APPEAL

Father raises the following issues on appeal:

   I.     Whether the [Orphans' Court] erred in determining that [the Agency] presented clear and convincing evidence that grounds for involuntary termination exist?

   II.    Whether the [Orphans' Court] erred in determining that the best interests of the [Child] would be served by terminating parental rights?

Father's Brief at 7 (excess capitalization omitted).

## LEGAL ANALYSIS

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported,

---

[1] Mother's appeal from this same order is pending at 1810 MDA 2015.

appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* We may reverse a decision based on an abuse of discretion only upon demonstration of "manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* We may not reverse, however, merely because the record would support a different result." *Id.* at 827.

We give great deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). The Orphans' Court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). In addition, in order to affirm the termination of parental rights, this Court need only agree with any one subsection under Section 2511(a). *See In re B.L.W.* 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citations omitted).

## Termination Pursuant to 2511(a)(1)

Section 2511(a)(1) provides that the trial court may terminate parental rights if the petitioner establishes that for six months, the parent demonstrated a settled intent to relinquish a parental claim or a refusal or failure to perform parental duties:

> a)   The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1)   The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. 2511(a)(1). This Court has interpreted this provision as requiring the petitioner to demonstrate a settled intent to relinquish a parental claim to a child or a refusal or failure to parent:

> To satisfy the requirements of section 2511(a)(1), the moving party must produce <u>clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.</u>

***In re Z.S.W.***, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted).

This Court has defined "parental duties" in general as the obligation to affirmatively and consistently provide safety, security and stability for the child:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty … requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

*Id.*

Moreover, a parent must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent child relationship:

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (internal citations omitted).

And most importantly, "parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with her physical and emotional needs." **Id.**

In the instant case, the Orphans' Court properly concluded that the Agency met the requirements of Section 2511(a)(1). The Orphan's Court

found that, during the relevant period prior to the Agency's filing of the TPR

Petition on April 1, 2015, Father had failed to maintain stable housing; he

had continued to drink alcohol despite being ordered to abstain from it,

culminating in a third driving under the influence conviction; his visits with

the Child, as well as his contact with the Agency, were inconsistent; and he

failed to meet his established goals.

> A review of the Permanency Review order entered during the six months immediately preceding this date, along with the testimony presented during the [TPR Hearing] reveals that [Father has] failed to perform parental duties, in that [he has] provided no housing or financial support for the [Child] during this time period. [Father] has had no fewer than four residences since the inception of this case[.] Initially, [Mother and Father] lived together and were eventually evicted from that first home. Despite domestic violence concerns, they have intermittently lived together since that time, sometimes concealing this fact from caseworkers and authorities. Both [parents] were incarcerated for at least part of this time period ([Father] for approximately a month in the Montour County Prison)[.]
>
> Although never the main concern, home conditions were noted to be cluttered, with the presence of numerous beer cans and cigarette butts, and the home was cold due to lack of insulation. Caseworkers were unable to further assess home conditions because [Mother and Father] denied them entry into the residence. Moreover, [Father] despite being ordered to abstain from alcohol, was observed to smell of alcohol, was suspected of driving [with] the [Child] after having imbibed alcohol, and admitted to drinking daily until prohibited from [drinking] alcohol by his probation. [Father] recently received a DUI as well (his third lifetime DUI). . . . The Agency was unable to confirm that either parent was maintaining employment as required by the Court's order, although it appears from [Father's] testimony that he at least is currently employed.

*** 

    [Father] has completed the court-ordered drug and alcohol evaluation but has failed to follow through with the recommendations for counseling. It should also be noted that the evaluation itself was not completed until after the [TPR Petition] was filed. Neither parent has pursued completion of anger management or otherwise attempted to meaningfully address the issues of domestic violence between them.

    [Father was] afforded one hour biweekly supervised visitation, but [was] inconsistent in [his] attendance, attending only . . . twenty . . . visits from January 2014 until the visits were suspended in April of 2015. [Father] did attend and complete some parenting classes, but did not complete several other classes, including anger management. [He was] unable to progress to unsupervised visitation due to [his] inability to transfer skills learned in the parenting classes that [he] attended to the visits. Visits were suspended due to the [Child's] behaviors and discomfort with the visits. [Father has] also failed to maintain contact with [the Agency] on a consistent basis.

*** 

    In this case, where [Mother and Father] have both refused to perform certain parental duties, the Court's decision to terminate [their] parental rights to the [Child] was justified by the facts clearly and convincingly presented at the [TPR Hearing].

Orphans' Court's Opinion, 11/25/15, at 3-6 (citations omitted).

Father argues that the termination of his parental rights is not supported by the evidence of record, because the Agency "did not take the necessary steps to determine [his] ability . . . to separately and independently parent the [Child] without the presence in the home of [Mother], who by virtue of her violent behaviors and mental instability, is

unable to provide a safe and secure home for the [Child]." Father's Brief at 9. According to Father, he "is being punished for the sins [of] the Mother[,]" *id.* at 17, because "Mother's [traumatic childhood], prior to her cohabitating with [him] is clearly the primary cause for the Agency's involvement in this case." *Id.* at 12. Father asserts that, although he "does some have some issues regarding alcohol abuse, these do not prevent him from adequately caring for the [Child] and providing a secure, healthy atmosphere for him, while the [Child] is no longer in the presence of [Mother]." Father's Brief at 9.

Our review of the record refutes Father's claims. In making this argument, Father downplays his use of alcohol, and actually claims it has been "remedied." Father's Brief at 19. Instead, he assigns blame to Mother's violent propensities and untreated health issues for the continued placement of the Child. We find that these arguments focus on the credibility of the witnesses and we accept the Orphans' Court's crediting the testimony of the Agency's employees over Father's testimony. *In re M.G.*, *supra*. Additionally, we note that nowhere in his testimony does Father suggest that he was willing to parent the Child on his own, or that he would prohibit Mother from living with him. At the time of the TPR Hearing, the parties were living together. Finally, the Orphans' Court properly noted that it could not consider Father's efforts made after the TPR petition was filed when considering termination under 23 Pa.C.S.A. section 2511(a)(1). *See* 23 Pa.C.S. § 2511(b) (providing that "[w]ith respect to any petition filed

pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the [TPR Petition]."

Accordingly, the court did not abuse its discretion in terminating Father's parental rights pursuant to 23 Pa.C.S. §2511(a)(1), and we need not consider the other basis for termination under this section. **See B.L.W.**, **supra**.

**Termination Pursuant to Section 2511(b)**

We also agree with the Orphans' Court's determination that the Agency met its burden under 23 Pa.C.S.A. §2511(b) and that terminating Father's parental rights is in the best interest of the Child.

With respect to Section 2511(b), our analysis shifts focus from parental actions in fulfilling parental duties to the effect that terminating the parental bond will have on the child. Section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." **In re: Adoption of J.M.**, 991 A.2d 321, 324 (Pa. Super. 2010).

In **In re C.M.S.**, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court found that "intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, the Orphans' Court must also discern the nature and status of the parent-

child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.*

In cases where there is no evidence of a bond between a parent and a child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Thus, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

In the instant case, the Orphans' Court relied upon the testimony from the bond assessment expert at the TPR Hearing, noted his testimony that Father actually had an unhealthy bond with the Child, and accepted the expert's conclusion that termination of Father's parental rights was in the Child's best interests:

> Here, the Court examined the existence and quality of the bond between [Mother and Father] and the [Child], and a bonding assessment was completed by Dr. Kasey Shienvold on February 3, 2015. Due to the age of the [Child], this bonding assessment consisted of interviews with both [Mother and Father] and with the foster parents, as well as the observation of the [Child] with both [Mother and Father] and the foster family, but did not include interviews with the [Child].
>
> Dr. Shienvold observed that the [Child] displayed neither fear nor excitement during his interactions with [Mother and Father] and that he separated without difficulty or sadness at the end of the interactions. He further concluded that, "given the experiences and what [the Child] was exposed to in that first year and a half [of his life], it is very, very difficult to believe that [the Child] has a strong and healthy attachment with [Mother and Father] that would cause him emotional strife or long-term detriment going forward."
>
> Having acknowledged the existence of a bond, or attachment, the Court must then turn to assess the quality

of that bond in determining whether termination would serve the best interests of the [Child]. The Court found that the bond between [Mother and Father] and the [Child] was not a strong, healthy or beneficial one. Because of the age of the [Child], because [both Mother and Father] exhibited the three major destabilizing factors associated with the inability to forge or maintain healthy attachments (alcohol or drug abuse, domestic violence within the home, and untreated mental health issues) which would indicate a beneficial bond between [them] and the [Child], and also because of the limited insight and accountability present in [Mother and Father], Dr. Shienvold opined that, "of the destabilizers we talked about, they ticked off every box, which suggests that . . . the attachment is not a healthy one[,]" and that if the parental relationship between the [Child] and [Mother and Father] was terminated, "it would not be a long-term harmful thing." Furthermore, the [Child] has formed a beneficial bond with his foster parents.

While the Court acknowledges that both [Mother and Father] love the [Child], in the end, the attachment has nevertheless not been positive for the [Child] and has been the cause of much turmoil in his life. In the end, the Court agrees with the analysis of Dr. Shienvold and therefore believes that termination of [Mother and Father's] parental rights serves the best interest of the [Child].

Orphans' Court Opinion, 11/23/15, at 6-7 (citations omitted).

Father argues that Dr. Shienvold "inappropriately dismissed the love between [him] and his son." Father's Brief at 18. On-cross examination by Father's counsel, Dr. Shienvold disagreed with counsel's characterization of Father's love and affection as "kind of one of the core issues in a bonding assessment[.]" Dr. Shienvold opined:

A. No, it's not. I mean it's part of it, but it's – I don't think it is a core issue. The core issue is the health of that relationship which is defined by their consistency, and then as I talked about, the factors that establish a

healthy attachment. Certainly love and affection are a piece of that but you can – you can love somebody tremendously and still be very – there's millions of abusers in this world who claim to love their victims very much. So -- and not have healthy relationships with them. So love is an issue but it's not a core as a base of what it takes to - - it's kind of like a square is a rectangle but a rectangle isn't a square. You don't - - love is important but it's not the end all be all to form a healthy relationship.

N.T., 9/17/15, at 25-26.

As noted above, while the Orphans' Court acknowledged Father's love of the Child, it accepted the expert's testimony that the attachment that exists is not positive for the Child. Once again, the credibility of the Dr. Shienvold's testimony, and the weight to be given it, are matters exclusively within the province of the Orphans' Court as fact finder. *In re M.G.*, *supra*. Thus, Father's claim fails.

**CONCLUSION**

In sum, our review of the record supports the Orphans' Court's determination that the Agency met its statutory burden of proving by clear and convincing evidence that Father's parental rights should be terminated pursuant to 23 Pa.C.S. §§ 2511(a)(1) and 2511(b). Accordingly, we affirm.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/15/2016